UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FPP, LLC ("FPP"), f/k/a Panther Panache, LLC,

                  Plaintiff,

      -v-                                       No. 14-CV-6172-LTS

Xaxis US, LLC ("Xaxis"), f/k/a 24/7 Real Media US, Inc.,

                  Defendant.
------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff FPP, LLC, f/k/a Panther Panache, LLC ("Plaintiff"), is a limited liability company organized under the laws of Nevada.  As an operating company, it created and patented software and related products and provided video advertising insertion and rendering technology, advertising fulfillment software, and related products and services.  This action arises out of Plaintiff's sale of substantially all of its operating assets to Defendant Xaxis US, LLC, f/k/a 24/7 Real Media US, Inc. ("Defendant"), for which transaction Plaintiff contends it was not fully paid.  Plaintiff asserts claims against Defendant for breach of contract and, in the alternative, fraud.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1).

        Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Count Two of the Amended Complaint, Plaintiff's claim for fraud, as duplicative of the breach of contract claim and for failure to state a viable fraud claim.  For the following reasons, Defendant's motion to dismiss the fraud claim is denied.

BACKGROUND

Unless otherwise indicated, the following facts are drawn from the Amended Complaint and are assumed true for purposes of this motion.  When Plaintiff was exploring options for selling the company's operating assets, Plaintiff received proposed letters of intent from two finalists, including Defendant.  (Amended Complaint ("Am. Compl.") ¶ 67.)  In November 2011, Plaintiff and Defendant executed an Asset Purchase Agreement ("Agreement" or "APA"), which provided for the sale of substantially all of Plaintiff's assets to Defendant.  (Am. Compl. ¶ 1.)  The Agreement stipulated terms for the Purchase Price of the sale, part of which would be paid up front (the "Closing Payment") and the remainder of which would be paid after closing based on an earn-out formula (the "Earn-Out Payment").  The Earn-Out Payment was to be calculated as two times the 2013 Net Revenue, minus the initial Closing Payment, to be paid after the 2013 operating year.  (APA § 2.1.1(b).)  The Agreement set forth a maximum Purchase Price of $18 million and a Closing Payment of $5 million, thereby capping the Earn-Out Payment at $13 million.  (APA § 2.1.1(c).)  The Net Revenue was to equal the aggregate of seven (7) enumerated items, including Basic Video Media Fees.  (APA § 2.1.2.)

The Agreement was negotiated by business representatives of Plaintiff (Steven Robinson and James H. McGuire) and Defendant (Sheila Schneider and Robert Spence).  On November 1, 2011, Spence sent Robinson a draft definition of the term "Basic Video Media Fees" that provided for the determination of such fees "on a CPM basis, which shall be equal to twenty-five percent (25%) of the average CPM for video ad serving earned under third-party agreements."[1]  (See Am. Compl. ¶ 73.)  Robinson rejected the draft language, stating that the

---

[1]    "CPM" is an abbreviation for cost per thousand impressions.  Plaintiff contends that, as used in the agreement, it referred to the price charged to customers for ad displays (impressions).  Defendant contends that, for purposes of the disputed

definition had to reflect the actual revenue earned by Defendant through advertisers' video ad serving fees rather than a portion of revenues based on third-party benchmarks.  (Am. Compl. ¶ 75.)

On November 4, 2011, the parties held a telephone conference that included negotiations over the definition of Basic Video Media Fees.  Robinson reiterated that Plaintiff must receive credit for actual revenues earned from Basic Video Media, and the group discussed what Defendant's capabilities after the acquisition would be for tracking and verifying Basic Video Media impressions and CPM.  (Am. Compl. ¶¶ 76, 77.)  Schneider rejected McGuire's suggestion to use an agreed, fixed CPM rate such as $10.00, stating it would be too difficult to determine a fixed rate since CPM rates vary and it would be difficult to predict the CPM rate two years in the future.  (Am. Compl. ¶ 78.)  The participants tasked Schneider with drafting a Basic Video Media Fees definition based on customer CPM.  (Am. Compl. ¶ 79.)

In a telephone conference on November 11, 2011, Spence confirmed that Schneider was revising the Basic Video Media Fees definition in response to the prior discussion.  (Am. Compl. ¶ 81.)  On November 18, Spence emailed Robinson, stating that Schneider had revised the language to reflect Plaintiff's "'actual' concept re display."  (Am. Compl. ¶ 83.)  On November 23, Spence emailed Robinson to confirm the inclusion of a final definition in the APA, stating that it " is responsive to [FPP's] request."  (Am. Compl. ¶ 84.)  Robinson agreed with Spence.  (Am. Compl. ¶ 85.)  Plaintiff and Defendant signed the APA and closed the deal.

_____

provision of the agreement, it was to be calculated based on internal operating cost allocations.  (See, e.g., Am. Compl. ¶¶ 56-57.)

At the end of 2013, Robinson sent his calculations of the Earn-Out Payment to Defendant, showing that the maximum Earn-Out Payment was due.  (Am. Compl. ¶ 95.)  On January 16, 2014, Spence responded that Defendant's auditors were calculating the Earn-Out Payment.  (Am. Compl. ¶ 96.)  On March 27, 2014, Schneider informed Robinson that no Earn-Out Payment was due.  (Am. Compl. ¶ 97.)  Defendant stated that it was using an operating expense calculation as a measure for the Basic Video Media Fees.  (Am. Compl. ¶ 98.)  Defendant stated that this expense calculation was used as an internal cross charge and had been implemented prior to the November 2011 asset sale.  (Am. Compl. ¶ 98.)  According to Plaintiff, Defendant used a one cent ($0.01) measure as the "applicable CPM" in determining Basic Video Media Fees for purposes of the Earn-Out Payment computation.  (Am. Compl. ¶ 100.)

The parties dispute the meaning of, and reference point for, the calculation of Basic Video Media Fees under the APA.  In the event Defendant's construction of the Earn-Out Payment definition is upheld, Plaintiff asserts in the alternative its claim of fraud, including fraudulent inducement – specifically that (1) Defendant knowingly and intentionally misrepresented to Plaintiff that the Basic Video Media Fees would be calculated on the basis of actual revenues and applicable CPM rate; and that (2) Defendant knowingly and intentionally hid from Plaintiff its November 2011 operating cost calculations regarding a one-cent ($0.01) charge and its intent to use the one cent measure as the operative CPM rate.

DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In order to survive a motion to dismiss, the complaint must state a plausible claim for relief.  Id. at 679.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.

Defendant's Reliance on Matters Extraneous to the Complaint

Defendant has attached a document, labeled "Projections for Illustration and Discussion Purposes Only,"[2] to its reply papers. Defendant contends that the document supports dismissal of Plaintiff's fraud claim because it contains certain projected fees and rates that Defendant sent to Plaintiff prior to execution of the Agreement, and that these fees and rates contradict Plaintiff's claimed understanding of how the parties intended to calculate the Basic Video Media Fees.  Plaintiff argues that the Court may not consider this document in connection with the motion.

In deciding motion to dismiss under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  The court may consider a document not incorporated by reference if the complaint relies heavily upon the terms and effect of the document, rendering it "integral" to the complaint.  Id. at 111 (citations omitted).  Mere notice or possession of the document by the plaintiff is not, however, sufficient.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d

---

[2]     (Exhibit A to Decl. Of Paul F. Corcoran.)  The parties refer to the document as the "Projection Sheet" in their briefing, and the Court adopts that nomenclature.

Cir. 2002).  Even if a document is "integral" to the complaint, it must be clear on the record that

there is no dispute regarding the authenticity or accuracy of the document, and that there are no

material disputed issues of fact regarding its relevance.  Faulkner v. Beer, 463 F.3d 130, 134 (2d

Cir. 2006).

        The Projection Sheet attached to Defendant's reply papers was not attached to the

Amended Complaint, nor was it specifically referenced in the Amended Complaint, although

Defendant asserts that it was the source of certain figures quoted in the pleading.  To warrant

treatment of a document as incorporated by reference, "the complaint must make 'a clear,

definite and substantial reference to the document[].'"  See Madu, Edozie & Madu, P.C. v.

SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt,

Inc., 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003)).  While Defendant claims, and Plaintiff

concedes in its Sur-Reply, that paragraphs 44 and 58 of the Amended Complaint mention figures

pertaining to License Fees and Net Revenue calculations, and these categories of calculations are

also contained in the Projection Sheet, neither paragraph of the Amended Complaint explicitly

refers to the Projection Sheet, nor does the Amended Complaint cite the Projection Sheet as a

source for calculations or the basis of any understandings the parties reached during

negotiations.  Because there is no "clear, definite, and substantial reference" to the Projection

Sheet, the Projection Sheet was not incorporated by reference to the Amended Complaint.

        Nor is the Projection Sheet "integral" to the complaint.  There is no indication

that the Amended Complaint relies heavily on the terms and effect of the Projection Sheet; to the

contrary, Plaintiff asserts that the document only represents revenue estimates reflecting

Defendant's understanding of the calculations well before the alleged fraud took place.  (Sur-

Reply at 7).  Plaintiff also contends, and Defendant concedes, that the document contains some

inaccuracies.  (Sur-Reply at 4; 5 Sur-Sur-Reply at 4, 5).  Because of the inaccuracies in the document and because the Plaintiff proffers that the calculations do not represent a mutual understanding of the parties regarding the disputed calculation of fees, the Court will not treat the document as "integral" to the Amended Complaint in connection with the motion.

Accordingly, the Court will not consider Defendant's arguments insofar as they rely on the Projection Sheet.

Plaintiff's Fraud Claim Is Not Duplicative of Plaintiff's Breach of Contract Claim

Plaintiff alleges that Defendant fraudulently induced Plaintiff to enter into the contract by knowingly and intentionally misrepresenting to Plaintiff that Basic Video Media Fees would be calculated on the basis of actual revenues and a customer price-based CPM rate. Plaintiff also alleges that Defendant fraudulently concealed its November 2011 operating cost calculations regarding a one-cent ($0.01) charge and its intent to use the one-cent measure as the operative CPM rate.  To state a fraud claim that is distinct from a breach of contract claim, a plaintiff must (1) demonstrate a legal duty separate from the duty to perform under the contract; or (2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (3) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.  Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996).  Defendant focuses on the second and third grounds, arguing that the Amended Complaint satisfies neither.  The Court finds, however, that the Amended Complaint pleads factual matter sufficient to support either of those grounds.

The Court first notes that, while Plaintiff's contract interpretation argument regarding CPM rests on the same factual premises as its claim that Defendant fraudulently

represented that Defendant was agreeing to base Earn-Out computations on customer revenue

figures, the fraudulent inducement cause of action is pleaded in the alternative and would come

into play only if the Court were to reject Plaintiff's contract interpretation argument.  The causes

of action therefore are not facially duplicative; the Court will address the sufficiency of

Plaintiff's fraud pleading later in this Memorandum Opinion and Order.

           With respect to the Bridgestone/Firestone issues, Plaintiff has pleaded facts

sufficient to satisfy the second prong.  New York law "distinguishes between a promissory

statement of what will be done in the future that gives rise only to a breach of contract cause of

action and a misrepresentation of a present fact that gives rise to a separate cause of action for

fraudulent inducement."  Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184

(2d Cir. 2007).  "'[A] misrepresentation of present facts is collateral to the contract (though it

may have induced the plaintiff to sign the contract) and therefore involves a separate breach of

duty.'"  Id. (quoting First Bank of the Americas v. Motor Car Funding, Inc., 257 A.D.2d 287

(1999)).  Here, Plaintiff alleges that, at the time Defendant was representing to Plaintiff that it

had drafted the definition to reflect Plaintiff's position that Basic Video Media Fees must be

based on actual revenue generated from the CPM, it was utilizing a one-cent charge as the

operative CPM rate for internal purposes, information that Defendant knew would affect the

eventual Earn-Out calculation and concealed from Plaintiff because Defendant knew that this

method of analysis was inconsistent with Defendant's representations about its approach to the

key calculation.  (Am. Compl. ¶¶ 99, 100, 127).  These alleged misstatements and omissions

could support a determination that Defendant made misrepresentations of present facts (i.e. the

nature of the internal formula it referenced in the proffered contractual language) that were

materially pertinent to the pre-contractual negotiations, and upon which Plaintiff relied when entering the Agreement.

Plaintiff has also pleaded sufficient facts to allege plausibly that it suffered damages different from those it claims under its interpretation of the Earn-Out provision.  In this connection, Plaintiff alleges that Defendant fraudulently induced it to reject another specific proposed transaction that would have paid a value higher than the total payment under Defendant's interpretation of the Asset Purchase Agreement.

<u>Plaintiff States a Cause of Action For Fraud</u>

Defendant further argues that Plaintiff's fraud claim must be dismissed for failure to state a cause of action.  To state a claim for fraud under New York common law, a plaintiff must show "'(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury.'" <u>Premium Mortgage Corp. v. Equifax, Inc.</u>, 583 F.3d 103, 108 (2d Cir. 2009) (quoting <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 421 (1996)).  Federal Rule of Civil Procedure 9(b) requires that claims of fraud be pleaded with particularity.  In order to satisfy the heightened pleading requirement of Rule 9(b), a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993).  The Court finds that the Amended Complaint meets these requirements for stating a cause of action for fraud.

The Amended Complaint identifies sufficiently the allegedly fraudulent statements and explains why they were fraudulent.  Defendant argues, however, that Plaintiff's fraudulent inducement claim and fraudulent concealment claim fail because Plaintiff's reliance on Defendant's alleged misrepresentations was unreasonable.  Specifically, Defendant argues that Plaintiff's alleged revenue-based understanding of the Earn-Out provision is inconsistent with the plain language of the key provision, which refers to an internal formula, and that, as a sophisticated party, Plaintiff should have required language incorporating an outside-revenue reference or specifically investigated the internal CPM computation that was referred to in Defendant's language.

Plaintiff's allegations are, however, sufficient to state plausibly the reasonable reliance element of its fraud claim.  Plaintiff alleges that, in several discussions leading up to the Agreement, representatives of the Plaintiff and Defendant explicitly addressed their views concerning the Basic Video Media Fees definition.  When Defendant first proposed draft language, Robinson rejected it and expressed Plaintiff's position that the definition had to reflect actual revenue.  (Am. Compl. ¶ 75).  The parties held telephonic conferences in which they referred to how the Basic Video Media Fees would be calculated.  Again, Robinson emphasized Plaintiff's precondition that the Basic Video Media Fees must allow for the tracking of revenue (Am. Compl. ¶ 76).  Defendant made affirmative representations that it was drafting and had drafted the language of the Basic Video Media Fees definition to embrace Plaintiff's precondition regarding revenue.  If a fact finder is persuaded that, as Plaintiff alleges, Defendant deliberately misled Plaintiff as to the meaning and operation of the language that Defendant had proposed and concealed the nature of the referenced CPM calculation, the fact finder could conclude that Plaintiff's reliance was reasonable, since the language of the provision does not

explicitly state that the "internal CPM charge[]" was cost-, rather than revenue-based or that it was a fixed figure unrelated to actual customer transactions.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss Count Two of the Amended Complaint is denied in its entirety.  This Order resolves docket entry no. 21.

The final pre-trial conference in this case is scheduled for April 8, 2016, at 10:00 a.m.

SO ORDERED.

Dated: New York, New York
        September 1, 2015

        /s/  Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge